IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| GEORGE ARROYO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-001 |
| | ) | |
| STATE OF GEORGIA; TYRONE OLIVER, | ) | |
| Commissioner of the Department of | ) | |
| Corrections; MR. CHAMBERS, Warden of | ) | |
| Johnson State Prison; JOHN DOE, Deputy | ) | |
| Warden of Care and Treatment of Johnson | ) | |
| State Prison, and JANE DOE, Officer at | ) | |
| Johnson State Prison, | ) | |
| | ) | |
| Defendants. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, incarcerated at Hays State Prison, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia.  Because Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants.[1]  Phillips v.

---

[1] On February 13, 2024, the Court recommended dismissing this case because Plaintiff failed to timely return his IFP paperwork. (Doc. no. 5.)  However, upon receipt of the paperwork, (doc. nos. 7, 8), the Court vacated its recommendation for dismissal on February 23, 2024, and explained the complaint would be screened in the normal course of business, (doc. no. 9).  After the Court vacated its February 13th recommendation, the Clerk of Court received Plaintiff's objection to dismissal which showed prison officials took over ten days to mail the IFP paperwork after Plaintiff deposited it in the prison mail system. (Doc. no. 11, p. 7.)  While there is no apparent explanation for delay by prison officials, Plaintiff has suffered no prejudice because the Court accepted the IFP paperwork and allowed the case to move forward to the instant screening.

Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.      **Screening the Complaint**

   A.      **Background**

Plaintiff names the following Defendants:  (1) State of Georgia, (2) Tyrone Oliver, Commissioner of the Department Corrections, (3) Mr. Chambers, JSP Warden, (4) John Doe, JSP Deputy Warden of Care and Treatment, and (5) Jane Doe, JSP Officer. (Doc. no. 1, pp. 1, 5-8.)  Plaintiff sues Defendants in their individual and official capacities. (Id. at 5-8.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On the afternoon of June 30, 2022, Defendant Jane Doe refused to open the gate to the inmate dining hall to allow the group of unsecured inmates congregated outside the gate to proceed into the dining hall. (Id. at 9.)  While waiting outside the gate, a fellow inmate whom Plaintiff did not know approached him and began aggressively discussing Plaintiff's tablet device. (Id.)  Although Plaintiff did not know the inmate, he recognized the person's gang tattoos and attempted to walk away. (Id.)  While walking back to his dormitory, Plaintiff was attacked from behind by the unknown individual "as well as numerous other unknown individuals." (Id.)

Plaintiff started running back to his dormitory to escape his attackers and to bandage his wounds. (Id. at 9-10.)  Defendant Jane Doe came to Plaintiff's dormitory "sometime later and escorted him to medical." (Id. at 10.)  Upon his arrival at the JSP medical department at 4:00 p.m., an examination by a nurse revealed Plaintiff had "abrasions, contusions, lacerations, and punctures to the head, neck, back, and left arm." (Id.)  Although the nurse treated Plaintiff with

three staples to close the lacerations on his head, as well as cleaned and dressed all of Plaintiff's other injuries, he complains he was never taken to the hospital or seen by a physician's assistant or doctor. (Id.) The notes from his visit to the medical department, attached as Exhibits 1 and 2 to the complaint, state that Plaintiff refused to speak or answer questions,[2] but he was stable, three staples were applied, all wounds were cleaned with wound cleanser and covered securely, bleeding was controlled, and antibiotic ointment was applied. (Id. at 15-16.) Plaintiff was immediately placed in segregation and was only seen in the medical department one additional time before his transfer to Macon State Prison. (Id.)

Plaintiff further alleges that because he "did not know the original perpetrator and was completely blindsided by all perpetrators," no discipline was ever imposed. (Id. at 11.) Plaintiff states he has unidentified "actual and permanent injury," for which he seeks compensatory and punitive damages in an amount exceeding 1.5 million dollars. (Id. at 11-13.)

**B.    Discussion**

**1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson

---

[2]Plaintiff disputes that he refused to speak, but he does not provide any information about what he allegedly said. (Doc. no. 1, p. 11.)

3

v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## 2. Plaintiff Does Not State a Failure to Protect Claim Against Any Defendant

A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*). However, because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation. Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005); see also Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981) ("This does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."); Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) ("Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" (citing Farmer, 511 U.S. at 833-34)). "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014).

"Merely negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*)

(citation omitted).  Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk.  Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

The three elements of a failure-to-protect claim, which are evaluated in part by an objective standard and in part by a subjective standard, include:  (1) incarceration under conditions posing a substantial risk of serious harm; (2) the defendants had a sufficiently culpable state of mind; and (3) causation, e.g., demonstrating the constitutional violation caused an injury.  Cox v. Nobles, 15 F.4th 1350, 1357-58 (11th Cir. 2021); see also Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (*per curiam*) (explaining objective and subjective analysis of three elements of § 1983 deliberate indifference claim).  The second element, deliberate indifference, occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety."  Cox, 15 F.4th at 1358 (citation omitted).  Thus, Plaintiff must allege a Defendant "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that a Defendant "dr[ew] the inference." Id. (citation omitted).

Plaintiff has not alleged any Defendant consciously disregarded a serious and imminent risk to Plaintiff.  First, applying an objective standard to the first prong of Plaintiff's deliberate indifference claim, Plaintiff has not alleged he was exposed to "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."  Marbury, 936 F.3d at 1233.  Plaintiff may satisfy this requirement

6

regarding a substantial risk of serious harm either by alleging "individualized risk based on specific threats" or "environmental risk based on dangerous prison conditions."  See Bugge v. Roberts, 430 F. App'x 753, 758-59 (11th Cir. 2011) (*per curiam*).  An inmate plaintiff may satisfy the latter by alleging he is confined "in a prison where violence and terror reign." Harrison, 746 F.3d at 1299.  Here, Plaintiff has not done so.  He says only that group of inmates had congregated outside the gate leading to the dining hall on one afternoon in June.  He provides no details suggesting knowledge or warning of any substantial risk of harm.  Indeed, Plaintiff's description of events shows the attack was unprovoked and without warning, as Plaintiff was simply waiting to enter the dining hall when an unknown person approached him to discuss his tablet, and the attack by unknown individuals occurred after Plaintiff had turned to walk away.  (Doc. no. 1, p. 9.)  Neither vague concerns about safety in the prison setting, nor an unpredictable attack with no prior threat are sufficient to establish a substantial risk of serious harm to Plaintiff.  See Marbury, 936 F.3d at 1237; Est. of Owens v. GEO Grp., Inc., 660 F. App'x 763, 772 (11th Cir. 2016) (*per curiam*).

Second, Plaintiff has not alleged any Defendant actually (subjectively) knew Plaintiff faced a substantial risk of serious harm, let alone that they disregarded any such known risk.  Plaintiff does not allege he notified any Defendant of a potential threat prior to the attack,[3] including Defendant Jane Doe whom he states was present and in charge of deciding whether to open the gate to allow entry to the dining hall.  Nor has Plaintiff alleged any Defendant knew that allowing inmates to congregate outside the dining hall gate created an opportunity

---

[3] Indeed, Plaintiff states he did not know his attacker(s) and that he was "blindsided" on the day of the attack.  (Doc. no. 1, p. 11.)  He gives no indication of any prior interactions with his assailant(s), let alone interactions suggesting a particular threat of substantial harm about which he informed any Defendant.

for an assault to occur. To the extent Plaintiff's allegations could be read to suggest a congregation of inmates waiting to enter the dining hall could be problematic, or that because the group of inmates was known to have gang members in it, general knowledge of a violent history is not sufficient. See Marbury, 936 F.3d at 1237-38; Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (*per curiam*) (requiring "much more than mere awareness" of an inmate's "generally problematic nature" to impose liability for failing to protect against attack).

Third, Plaintiff cannot hold Defendants Oliver, Warden Chambers, or Deputy Warden John Doe, liable by virtue of their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold any of the three supervisory Defendants liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions

8

and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff appears to name these three individuals as Defendants not because of their direct involvement in the events about which he complains, but by virtue of their supervisory positions. Nowhere does Plaintiff allege these three were present for, or participated in, the substantive events on June 30th about which Plaintiff complains. Rather, he complains they did not act to prevent them.

Therefore, Plaintiff must allege a causal connection between these Defendants and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. First, as discussed above, there is no actionable, underlying constitutional violation regarding

Plaintiff's assault and thus no basis for *respondeat superior* liability on such claim. See Dang v. Sheriff, Seminole Cnty., Fla., 871 F.3d 1272, 1283 (11th Cir. 2017). Second, nothing in the complaint indicates Defendants were responsible for a policy or custom resulting in a violation of Plaintiff's rights. At best, Plaintiff states Warden Chambers and Deputy Warden Doe were responsible for the day-to-day operations of the prison. (Doc. no. 1, pp. 6-7.) Plaintiff's conclusory recitation of legalese about Warden Chambers having prior knowledge and warning of the wrongs perpetrated by other Defendants is devoid of any factual information of what the supposed "wrongs" were or how Defendant Chambers knew about such wrongs. (Id.) As to Defendant Oliver, Plaintiff alleges only that he "acted under the cloak of office and the pretense of law" to deprive Plaintiff of his "right to be free of unnecessary and wanton pain." (Id. at 5.) Any implicit suggestion that these Defendants allowed or otherwise tacitly authorized the conduct of subordinates via customs and practices of allowing inmates to assault each other is insufficient because he offers no facts to support this conclusory assertion. See Anderson v. Hall, Civ. Act. No. 5:19-cv-6, 2020 WL 2896682, at *2 (S.D. Ga. May 29, 2020) (dismissing claim for liability of supervisory prison officials where no facts alleged in support of causal connection allegations), *adopted by*, 2020 WL 3406329 (S.D. Ga. June 19, 2020). Nor does Plaintiff allege any facts to show these supervisory Defendants either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner.

In sum, Plaintiff has not alleged a viable failure-to-protect claim against any Defendant.

### 3. Plaintiff Fails to State a Claim for Deliberate Indifference to a Serious Medical Need

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege that: (1) he had a serious medical need –the objective component, (2) a defendant

10

acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person:  (1) was subjectively aware of a serious risk of harm, (2) disregarded that risk (3) by following a course of action which constituted "more than [gross] negligence."[4]  Id. at 1326-27.  "A prisoner must show the defendant prison officials acted with a sufficiently culpable state of mind."  Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) (citations omitted).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169

---

[4]The Court is aware that there is disagreement within Eleventh Circuit precedent as to whether the appropriate standard is more than "mere negligence" or more than "gross negligence."  Cf. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (mere negligence) with Goebert, 510 F.3d at 1327 (gross negligence).  A recent Eleventh Circuit decision attempting to resolve the conflict in favor of the gross negligence standard has been vacated and will be reheard *en banc*.  See Wade v. McDade, 67 F.4th 1363, 1374 (11th Cir. 2023), *vacated and reh'g en banc granted by* Wade v. Ga. Corr. Health, LLC, 83 F.4th 1332 (11th Cir. 2023).  The conflict need not delay the Court, however, because as explained herein, Plaintiff fails to state a claim under either standard, as this is a classic case of mere difference of opinion between medical provider and prisoner over the appropriate course of treatment.

11

F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim).

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Furthermore, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); see also Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments.").

Here, even if the Court assumes Plaintiff satisfies the serious medical need requirement, Plaintiff cannot satisfy the subjective component. Plaintiff acknowledges he was taken to the medical department and has attached medical notes describing the treatment he received in the form of staples, wound cleaning and dressing, and anti-biotic cream. Plaintiff complains he was not taken to the hospital or seen by a physician's assistant or doctor, but he provides no details of any additional problems after his treatment or that the

treatment was unsuccessful. He complains only that he wanted a different kind of treatment. This is a classic case of a mere difference of opinion between a prison medical official and a prisoner as to the proper course of treatment, and where, as here, an inmate's health complaints have received significant medical attention, the Court should not second guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013) (*per curiam*); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

As to the supervisory Defendants - Oliver, Chambers, and John Doe - nowhere does Plaintiff allege these three Defendants were present for, or participated in, Plaintiff's medical treatment. Nor does he allege any of these three Defendants were responsible for examining Plaintiff or making any determination about the type of treatment for Plaintiff. Courts have recognized that supervisory prison officials who are not medical professionals are entitled to rely on the decisions of trained medical practitioners regarding care provided to inmates. See Williams v. Limestone Cnty., Ala., 198 F. App'x 893, 897-98 (11th Cir. 2006) (*per curiam*); Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)), *adopted by* 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009) (Bowen, J.). In sum, Plaintiff merely disagrees with the nurse's informed medical opinion as to the course of treatment for Plaintiff's wounds. As such, Plaintiff fails to state a claim for deliberate indifference to a serious medical need.

### 4. Plaintiff Fails to State a Claim against the State of Georgia

The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Here, Plaintiff never mentions the State of Georgia in his statement of claim. His passing reference to Defendant Chambers participating in an unspecified "joint activity with the State of Georgia," (doc. no. 1, p. 6), does not suffice.

Moreover, "[t]he Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Furthermore, the Supreme Court has unambiguously stated that "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment . . . . This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp., 465 U.S. at 100 (citations omitted); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) (*per curiam*) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent.").

As Plaintiff has not mentioned the State of Georgia in his statement of claim, and as the State has immunity against Plaintiff's § 1983 claims, this Defendant should be dismissed from the case.

### 5. Official Capacity Monetary Damages

To the extent Plaintiff is suing Defendants in their official capacities, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's case be **DISMISSED** for failure to state a claim upon which relief may be granted and **CLOSED**.

SO REPORTED and RECOMMENDED this 15th day of March, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA